IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MADENNA K. DORGAN, AND; AND RICHARD DORGAN, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| ETHICON, INC., AND JOHNSON & JOHNSON; | ) ) ) ) |
| Defendants. | ) |

Case No. 4:20-00529-CV-RK

## ORDER

Before the Court is a motion for partial summary judgment filed by Defendants Ethicon, Inc. and Johnson & Johnson. (Doc. 83.) In particular, Defendants move to dismiss thirteen of the eighteen counts. The motion is briefed. (Docs. 84, 93.) After careful consideration, the motion is **GRANTED in part and DENIED in part**.

### Background[1]

This case arises out of the implantation and complications surrounding transvaginal mesh ("TVT") in Plaintiff Madenna Dorgan. On August 7, 2008, Ms. Dorgan underwent implantation of TVT, for treatment of stress urinary incontinence, performed by Dr. George Austin in Blue Springs, Missouri. On March 22, 2011, Dr. Austin removed a portion of extruded and exposed TVT from Ms. Dorgan. On October 23, 2012, Ms. Dorgan underwent surgery for mesh removal performed by Dr. Ebenezer Babalola in Kansas City, Kansas. On April 3, 2013, Ms. Dorgan underwent another mesh-removal procedure performed by Dr. William Wilson in Blue Springs, Missouri. Ms. Dorgan alleges that her TVT implant has caused her several injuries, including the following: severe pain; permanent vaginal-wall damage; nerve damage; vaginal scarring; erosion; incontinence; dyspareunia; inflammation; and urinary tract infections.

---

[1] The following facts are taken from Defendants' statement of undisputed facts. (Doc. 84.) Because the present briefs were filed in another court, the parties were not required to adhere to this Court's local rule mandating parties to specifically admit or deny statements of undisputed fact. Thus, the Court accepts these facts as true only for purposes of this motion. Plaintiffs may present alternative, additional, or otherwise contest these facts in subsequent motions or at trial.

Plaintiffs directly filed suit in the Multi-District Litigation No. 2327 (against Ethicon and others) on July 12, 2012. On October 8, 2012, Plaintiffs filed an Amended Short Form Complaint, naming Ethicon and four other corporations as Defendants. There, Plaintiffs assert the following claims:

1. Count 1- Negligence
2. Count 2- Strict Liability Manufacturing Defect
3. Count 3- Strict Liability Failure to Warn
4. Count 4- Strict Liability Defective Product
5. Count 5- Strict Liability Design Defect
6. Count 6- Common Law Fraud
7. Count 7- Fraudulent Concealment
8. Count 8- Constructive Fraud
9. Count 9- Negligent Misrepresentation
10. Count 10- Negligent Infliction of Emotional Distress
11. Count 11- Breach of Express Warranty
12. Count 12- Breach of Implied Warranty
13. Count 13- Violation of Consumer Protection Laws
14. Count 14- Gross Negligence
15. Count 15- Unjust Enrichment
16. Count 16- Loss of Consortium
17. Count 17- Punitive Damages
18. Count 18- Discovery Rule and Tolling

Defendants now move for summary judgment on Counts 1, 2, 4, 6, 7, 8, 9, 10, 11 12, 13, 14, and 15.

**Legal Standard**

A movant is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The rule requires summary judgment to be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## Discussion

Defendants make several arguments why the Counts listed above should be dismissed. The Court will address each in turn.

### I. Counts 1, 2, 9-12, 14—Plaintiffs' Manufacturing Defect, Negligent Misrepresentation, and Breach of Warranty Claims will be Dismissed, But Plaintiffs' General Negligence Claims Remain

As an initial matter, Defendants argue Counts 1, 2, 10, and 14 should be dismissed because there is no evidence the TVT deviated from its intended specifications. Plaintiffs do not dispute this and are no longer pursuing the manufacturing defect aspects of Counts 1, 2, 10, or 14. Plaintiffs contend, however, in Counts 1 and 10, they still maintain claims for general negligence and negligent infliction of emotional distress. Therefore, the Court will dismiss Counts 2 and 14 in their entirety[2], and will dismiss Counts 1 and 10 as to manufacturing defects. However, Counts 1 and 10 will not be dismissed as to claims of general negligence.

Plaintiffs have also indicated they are not pursuing claims for negligent misrepresentation (Count 9), breach of express warranty (Count 11), and breach of implied warrant (Count 12). Therefore, the Court will also dismiss Counts 9, 11, and 12.

### II. Count 4—The Elements of Strict Liability Defective Product are Identical to the Elements of Strict Liability Defective Design

Next, Defendants argue Missouri does not recognize a cause of action for strict liability defective product. To prove a claim of strict liability defective product under Missouri Law, Plaintiffs must prove:

> 1) the defendant sold the product in the course of its business; 2) the product was then in a defective condition, unreasonably dangerous when put to a reasonably anticipated use; 3) the product was used in a manner reasonably anticipated; and 4) the user was damaged as a direct result of the product.

*DG&G, Inc. v. FlexSol Packaging Corp. of Pompano Beach*, 576 F.3d 820, 824 (8th Cir. 2009) (citing *Lay v. P & G Health Care, Inc.,* 37 S.W.3d 310, 325 (Mo. App. 2000)). Plaintiffs cite to *Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 791 (Mo. Ct. App. 2008). In

---

[2] Defendants' motion will be granted as Count 14 for additional reasons, stated below, because Missouri does recognize degrees of negligence.

*Brown & Williamson*, the court held "[a] manufacturer is liable under a strict liability product defect claim if the product was in an unreasonably dangerous defective condition when put to a reasonably anticipated use, and the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold." *Id.* (citation, quotation marks, and emphasis omitted).

However, the elements for strict liability defective product are identical to strict liability defective design. *Linegar v. Armour of Am., Inc.*, 909 F.2d 1150, 1152 (8th Cir. 1990) (listing the same elements for strict liability design defect as the ones listed above). This indicates the cause of action for strict liability defective product (Count 4) is the same as strict liability design defect (Count 5). Therefore, the Court will grant Defendants' motion on this point.

### III.  Counts 6, 7, 8, 13—Plaintiffs' Fraud Claims are not Duplicative of Their Failure to Warn Claims

Defendants argue Plaintiffs' fraud claims are duplicative of their failure to warn claims because the gravamen of those allegations are that Defendants failed to disclose the risks of TVT. Defendants' arguments are without merit. Defendants' argument revolves around the learned intermediary doctrine. The learned intermediary doctrine "is a corollary to the rule that a manufacturer of prescription drugs or products discharges its duty to warn by providing the physician with information about risks associated with those products." *Doe v. Alpha Therapeutic Corp.*, 3 S.W.3d 404, 419 (Mo. Ct. App. 1999). In Missouri, the doctrine applies only if the manufacturer satisfies its duty to "properly warn the doctor of the dangers involved." *Krug v. Sterling Drug, Inc.*, 416 S.W.2d 143, 146 (Mo. 1967) (holding that under the learned intermediary doctrine "the manufacturer has 'a duty to properly warn the doctor of the dangers involved and it is incumbent upon the manufacturer to bring the warning home to the doctor.'"). Here, Plaintiffs provide sufficient evidence that Defendants' warnings, even to doctors, were insufficient. Thus, there exists a genuine issue of material fact, the applicability of the learned intermediary doctrine is in question, and summary judgment is not warranted on this point.

Additionally, several cases cited by Defendants are distinguishable. For instance, in *Hill v. Wyeth*, the Court granted summary judgment on the misrepresentation claims because plaintiffs merely argued the inadequacy of the warnings and failed to argue the defendant had a duty to warn the plaintiff individually. No. 4:03CV1526 JCH, 2007 WL 674251, at *4 (Feb. 28, 2007). Here, Plaintiffs argue the warnings to the doctors themselves were insufficient, rather than merely

4

arguing a failure to warn Plaintiffs individually. In *Huskey*, the court held the gravamen of the fraud claims was really a failure to warn because the plaintiff failed to identify any fraudulent statements relied on by plaintiff. *Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 736, 744 (S.D.W. Va. 2014). Here, the parties did not brief the existence, or absence, of fraudulent statements. Defendants' motion for summary judgment will be denied as to Counts 6, 7, 8, and 13 as to this point. However, Counts 7, 8, and 13 will be dismissed for other reasons articulated below.

IV.     **Count 7—Plaintiffs' Fraudulent Concealment Claims are not Recognized Under Missouri Law as an Independent Cause of Action**

Under Missouri law, fraudulent concealment is not an independent cause of action. *See, e.g., Nestlé Purina Petcare Co. v. Blue Buffalo Co.*, 181 F. Supp. 3d 618, 640 (E.D. Mo. 2016) ("Missouri courts have not recognized a separate claim of fraudulent concealment."). Instead, "in cases where misrepresentation is alleged to have occurred by nondisclosure, 'a party's silence in the face of a legal duty to speak replaces the first element [of a fraudulent misrepresentation claim]: the existence of a representation.'" *Id.* (quoting *Hess v. Chase Manhattan Bank, USA*, 220 S.W.3d 758, 765 (Mo. 2007)). Plaintiffs therefore cannot maintain an independent claim for fraudulent concealment and Defendants' motion for summary judgment will be granted on this point.

V.      **Count 8—Plaintiffs' Constructive Fraud Claim Fails Because They Were Not in a Fiduciary or Confidential Relationship with Ethicon**

Under Missouri law, "[c]ourts have equated constructive fraud with the breach or violation of a fiduciary, or confidential, relationship." *Fix v. Fix*, 847 S.W.2d 762, 765 (Mo. 1993). "One of the key elements of a fiduciary relationship . . . is the fiduciary's control of the supervised party's property." *Arnold v. Erkmann*, 934 S.W.2d 621, 629 (Mo. Ct. App. 1996); *accord Day v. Hupp*, 528 S.W.3d 400, 416 (Mo. Ct. App. 2017) ("A confidential relationship exists when one person relies on and trusts another with management of her property and attendance to her affairs, thereby creating some degree of fiduciary obligation."). A manufacturer's superior knowledge of a product does not satisfy this requirement. *See Simply Thick, LLC v. Thermo Pac, LLC*, No. 4:13-CV-1036 CAS, 2014 WL 3543403, at *6 (E.D. Mo. July 17, 2014) (rejecting plaintiff's argument that manufacturer's superior knowledge of the manufacture of its products created fiduciary obligation (citing *Arnold*, 934 S.W.2d at 629)).

5

Here, Plaintiffs have presented no evidence supporting the existence of a fiduciary or confidential relationship with Defendants. Therefore, Plaintiffs' constructive fraud claim fails and Defendants' motion for summary judgment will be granted on this point.

## VI. Count 13—Plaintiffs' Consumer Protection Claims Do Not Fail

Next, Defendants argue Plaintiffs' consumer protection claims fail because Ms. Dorgan did not actually purchase the TVT device(s) for personal, family or household purposes. Rather, Defendants argue it was the implant facility(ies) that purchased the device(s) and the device was purchased for medical and commercial purposes. Defendants' argument is without merit. First, at least one court has allowed a consumer protection claim to proceed where the allegations consisted of a faulty medical device and deceptive practices. *Mattingly v. Medtronic, Inc.*, 466 F. Supp. 2d 1170, 1173 (E.D. Mo. 2006) (denying motion to dismiss where plaintiff pleaded defendant had given false and misleading representations regarding the safety and potential risks of the product). Here, at the summary judgment stage, there is evidence of a defective product and deceptive practices. Second, "[m]edical goods and services meet the statutory definition of merchandise as defined by section 407.010(4)." *Freeman Health Sys. v. Wass*, 124 S.W.3d 504, 507 (Mo. Ct. App. 2004). To Defendants' point that TVT was not for personal or family use, the very purpose of TVT was to treat urinary incontinence, an issue very much affecting an individual and family. Finally, to any extent Defendants argue they cannot be sued because they were the manufacturer, rather than the direct seller of the TVT, Missouri courts have consistently held a buyer can sue a manufacturer under the Missouri Merchandising Practices Act. *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 670 (Mo. 2007). Therefore, Defendants' motion for summary judgment will be denied on this point.

## VII. Counts 14—Plaintiffs' Gross Negligence Claim is not Recognized as an Independent Cause of Action

Defendants argue summary judgment is warranted on Plaintiffs' gross negligence claims because Missouri does not recognize degrees of negligence. Defendants are correct. *DeCormier v. Harley-Davidson Motor Co. Grp., Inc.*, 446 S.W.3d 668, 671 (Mo. banc. 2014) ("Missouri courts do not recognize degrees of negligence at common law."). As such, Plaintiffs cannot maintain an independent cause of action for gross negligence and the Court will grant Defendants' motion as to this point.

6

**VIII.     Count 15—Plaintiffs' Unjust Enrichment Claim Does Not Fail**

Finally, Defendants argue Plaintiffs' unjust enrichment claim fails. "To establish the elements of an unjust enrichment claim, the plaintiff must prove that (1) he conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010). Defendants argue summary judgment is warranted because Plaintiffs did not confer a benefit directly, any retention of a benefit was not unjust, and Plaintiffs actually received the product they intended to obtain. As to conferring a benefit directly, a cause of action may still exist for unjust enrichment even where the benefit was conferred indirectly. *See Federated Mut. Ins. Co. v. Peery''s Auto Parts, L.L.C.*, No. 11-00172-CV-W-FJG, 2012 WL 3062720, at *2 (W.D. Mo. July 26, 2012). Here, Plaintiffs paid for the device, which arguably would confer an indirect benefit on Defendants. As to the second argument that any retention of the benefit was not unjust, Defendants offer no more than a conclusory argument. Defendants cite no evidence in the record, and make no further articulation of their argument. Such is insufficient to warrant summary judgment. Further, the evidence indicates Defendants may have provided a defective product, substantially damaging the Plaintiffs. A reasonable finder of fact could find that to retain the cost of that product in such a scenario would be unjust. Finally, the Court can dispatch with the last argument as well. Plaintiffs intended to obtain a product that resolved urinary incontinence, did not cause bodily damage, and did not cause ongoing pain and additional medical issues. There is sufficient evidence within the record that indicates Plaintiffs did not receive such a product, but rather one that did not resolve urinary incontinence, caused substantial pain and damage, and resulted in additional medical procedures and bills. While the product may not have deviated from its technical specifications, there is sufficient evidence it failed to perform as represented. Therefore, summary judgment will be denied on this point.

**Conclusion**

Accordingly, and after careful consideration, the Court **GRANTS in part and DENIES in part** Defendants' motion for partial summary judgment (Doc. 83). Specifically, the Court orders:

> 1. Defendants' motion for summary judgment as to Counts 2 and 14 are **GRANTED** and Counts 2 and 14 are dismissed in their entirety. Defendants; motion as to Counts 1 and 10 is **GRANTED** as to claims of manufacturing defect. To the extent

7

Plaintiffs maintain Counts1 and 10 under general negligence theories, those counts are not dismissed;

2. Defendants' motion as to Count 4 is **GRANTED**;
3. Defendants' motion as to Count 6 is **DENIED**;
4. Defendants' motion as to Counts 7 and 8 is **GRANTED**;
5. Defendants' motion as to Counts 9, 11, and 12 is **GRANTED**;
6. Defendants' motion as to Count 13 is **DENIED**;
7. Defendants' motion as to Count 15 is **DENIED**.

Thus, the remaining claims are:

1. Count 1- general negligence
2. Count 3- strict liability failure to warn
3. Count 5- product liability design defect
4. Count 6- fraud
5. Count 10- general negligent infliction of emotional distress
6. Count 13- violation of consumer protection laws
7. Count 15- unjust enrichment
8. Count 16- loss of consortium
9. Count 17- punitive damages
10. Count 18- discovery rule and equitable tolling

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: September 8, 2020